Christopher MAILLOUX, Plaintiff,

v.

TOWN OF LITTLETON and Alexander McCurdy, Defendants.

Civil Action No. 05–10762–JLT.

United States District Court, D. Massachusetts.

Jan. 11, 2007.

Paul A. Manoff, Law Office of Paul A. Manoff, Boston, MA, for Plaintiff.

Deborah I. Ecker, Leonard H. Kesten, Peter E. Montgomery, Brody, Hardon, Perkins, & Kesten LLP, Boston, MA, for Defendants.

## MEMORANDUM

TAURO, District Judge.

Christopher Mailloux (the "Plaintiff"), brings this action against Defendants, Town of Littleton ("the Town") and Alexander McCurdy ("McCurdy"), former Chief of the Town of Littleton Fire Department, for (1) breach of contract, (2) promissory estoppel, (3) violation of Mass. Gen. Laws ch. 149, section 185 ("the Whistleblower Statute"), (4) misrepresentation, and (5) violation of 42 U.S.C. § 1983. Defendants move for summary judgment on all counts. For the reasons set forth below, Defendants' *Motion for Summary Judgment* [# 14] is ALLOWED IN PART AND DENIED IN PART.

### Background

In February 2003, Plaintiff applied for a position as a per diem firefighter with the Town of Littleton Fire Department.[1] The Chief of the Town's Fire Department, McCurdy, recommended Plaintiff to the Town of Littleton's Board of Selectmen ("the Board"), who promptly hired him on a per diem basis.[2]

As Chief of the Town's fire department, McCurdy did not possess the authority to hire or terminate employees. That duty rested solely with the Board, the appointing authority for the Town.

Plaintiff worked two to three times per week, substituting for the Town's four full-time firefighters. Plaintiff did not have a written employment contract for his per diem position with the Town. Nor did the Town guarantee Plaintiff a certain number of work hours.

At the time the Town hired him on a per diem basis, Plaintiff knew that the Board was the appointing authority for the Town. Plaintiff also knew that the Board could refuse to appoint a candidate recommended by McCurdy.

---

1. The following background facts are taken as stated in Defs.' Mem. in Supp. of Defs.' Mot. for Summ. J., Pl.'s Statement of Additional Material Facts, Defs.' Statement of Undisputed Material Facts, Aff. of Christopher Mailloux, Defs.' Resp. to Pl.'s Additional Material Facts, and Pl.'s Opp'n to Defs.' Mot. for Summ. J.

2. According to Plaintiff, McCurdy recommended Plaintiff to the Board as a per diem firefighter because Plaintiff was more experienced than other candidates. Defendants deny this version of events. It is undisputed that Plaintiff is an Emergency Medical Technician ("EMT") and an experienced firefighter.

Defendants contest and deny the events as described in the following two paragraphs:

Once Plaintiff began serving as a per diem firefighter, McCurdy repeatedly promised Plaintiff that, if he moved his family to the Town and ceased working for other towns, McCurdy would recommend Plaintiff to the Board for the next available full-time opening. With this promise was the implied requirement that Plaintiff continue to do a good job in his duties as a Littleton firefighter. McCurdy instructed Plaintiff that, while the Board was the actual authority for hiring, they "always" followed McCurdy's recommendation and that it was an automatic process. Based on these promises, Plaintiff moved his family to the Town, quit his job as a per diem firefighter for the Town of Lincoln and continued to fulfill his responsibilities as a per diem firefighter for the Town of Littleton.

In 2004, both McCurdy and a second full-time firefighter for the Town, Alexander Steele McCurdy III ("Steele")[3], repeatedly asked Plaintiff to write down in a notebook the actions and statements of fellow Littleton firefighter Keith Dunn. Plaintiff believed that McCurdy was looking to falsify evidence against Mr. Dunn to develop justification for Mr. Dunn's dismissal. If Mr. Dunn was fired, McCurdy's son, Steele, would become the most senior firefighter in the department. Under the union contract, the senior firefighter received additional compensation. Although McCurdy never expressly told Plaintiff to write down anything false in the notebook, he implied that he wanted Plaintiff to write something false. Plaintiff refused to document Mr. Dunn's activities, because he believed doing so was highly unethical. And Plaintiff believed that doing so would make him part of an "illegal conspiracy." McCurdy repeatedly asked Plaintiff if he had written anything in the notebook. When Plaintiff said no, McCurdy made hostile remarks, including that Plaintiff "had no balls" and that he "better step up to the plate." At no time did McCurdy ever tell Plaintiff that his failure to write in the notebook would preclude him from getting the full-time firefighter position.

In the spring of 2004, the Town sought to fill a number of vacant full-time firefighter positions.[4] Prior to the 2004 commencement of the Town's hiring process, Plaintiff had not spoken with any member of the Board about being appointed to a full-time position. No member of the Board ever promised Plaintiff that the Board would appoint him to a full-time position.

As he had done for filling previous positions, McCurdy assembled a hiring committee to evaluate the candidates. The hiring committee was responsible for conducting initial interviews and recommending a number of applicants to the Board. Only candidates referred by the hiring committee would advance to interviews with the Board. The hiring committee consisted of members of the Littleton Fire Department command staff, a union representative, a citizen of the Town and an area Chief. Plaintiff maintains that the hiring committee was stacked with individuals loyal to McCurdy, including McCurdy's son, an in-law and several close friends.

When Plaintiff applied for a full-time firefighter position, the Town sent Plaintiff a letter dated June 29, 2005, stating that all applicants for the full-time firefighter position would be given a written test as

---

3. Alexander Steele McCurdy III is the son of Chief Alexander McCurdy.

4. According to Plaintiff, the Town of Littleton had two openings for full-time firefighter positions.

well as a physical ability test on July 10, 2004. The candidates were also informed that if they satisfied the minimum test requirements, they would be invited to participate in the hiring committee's interview process. Plaintiff took the written and physical examinations and scored above the minimum passing score for each. After reviewing the applicants' test scores and applications, the hiring committee did not select Plaintiff as one of the applicants to interview.

The Plaintiff complained to McCurdy and wrote a letter to the Board reminding it that in its June 29, 2005, letter, the Town had promised that the hiring committee would interview any applicant who satisfied the minimum test requirements.[5] Plaintiff believed he deserved an interview because he had passed the minimum requirements for both the written and physical tests. McCurdy, in response, acknowledged he had made a mistake and recommended that the hiring committee interview all candidates who passed both tests. The hiring committee then proceeded to interview all candidates who passed both tests, including the Plaintiff.

Following interviews of the applicants, the hiring committee selected five candidates whom they recommended that the Board interview. Plaintiff was not among the five candidates. The Board did not interview Plaintiff for the full-time firefighter position. And at no time did McCurdy recommend Plaintiff to the Board.

The Plaintiff complained about the hiring process to the Chairman of the Board, Robert Caruso ("Caruso"). Plaintiff maintains he had far more experience than both firefighters the Town hired and that he trained one of the hires at the state fire academy. After an investigation, the Board found that the hiring process was fair.

In his deposition, Chairman of the Board Caruso noted that the Board was unhappy that the hiring committee was not interviewing all qualified candidates as had been promised. It appeared to Caruso that the hiring committee had made up its mind as to whom the Board would interview even before the hiring committee had interviewed all the candidates. Caruso was not happy with the candidates recommended by the hiring committee. Several of the candidates had too little experience, and one had no relevant experience at all.

Plaintiff filed suit against the Town and McCurdy on March 25, 2006, in Massachusetts Superior Court, Middlesex County. Defendants removed the case to United States District Court, District of Massachusetts.

Plaintiff advances five causes of action: (1) breach of contract; (2) promissory estoppel; (3) retaliatory action under Mass. Gen. Laws ch. 149, section 185, for Plaintiff's refusal to assist Defendant McCurdy in an illegal conspiracy; (4) misrepresentation; and (5) violation of Plaintiff's First Amendment rights under 42 U.S.C. § 1983.

## Discussion

### A. *Summary Judgment Standard*

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[6] The existence of "*some* alleged factual dispute"

---

5. According to Plaintiff, when he approached McCurdy and showed him the letter he planned to mail to the Board, McCurdy made threats against Plaintiff and told him, "if this is the way you want to play, you should start packing your moving van, because you and your family are out of here." Defendants deny this version of events.

6. Fed.R.Civ.P. 56(c); *Mulloy v. Acushnet Co.,* 460 F.3d 141, 145 (1st Cir.2006).

between the parties does not defeat an otherwise properly supported motion for summary judgment—the requirement is that there be "no *genuine* issue of *material* fact." [7]

" '[G]enuine' means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a 'material fact' is one which 'might affect the outcome of the suit under the governing law.' " [8]

The party seeking summary judgment must show an absence of evidence to support the nonmoving party's case.[9] "Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." [10]

In determining whether that burden is met, a court "must view the record in the light most favorable to the nonmoving par-ty and give that party the benefit of all reasonable inferences in its favor." [11] A court, however, need not afford any weight to "conclusory allegations, improbable inferences, and unsupported speculation." [12] Summary judgment provides the necessary opportunity for a court " 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.' " [13]

## B. State Whistleblower Statute

In his complaint, Plaintiff asserts that the Town violated his rights under Mass. Gen. Laws ch. 149, section 185 because "[he] was not hired by the defendant town [14] in retaliation for his refusal to join defendant McCurdy and his son, . . . in an illegal conspiracy[.]" [15]

The relevant portion of the Whistleblower Statute provides that:

(b) An employer [16] shall not take any retaliatory action against an employee [17]

---

7. *Mulloy,* 460 F.3d at 145 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (emphasis in original).

8. *Seaboard Sur. Co. v. Town of Greenfield,* 370 F.3d 215, 218–19 (1st Cir.2004).

9. *Clifford v. Barnhart,* 449 F.3d 276, 280 (1st Cir.2006) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

10. *Id.* (quoting *Nat'l Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir. 1995)).

11. *Id.* (quoting *Nicolo v. Philip Morris, Inc.,* 201 F.3d 29, 33 (1st Cir.2000)).

12. *Santiago v. Feeney,* 379 F.Supp.2d 150, 154 (D.Mass.2005) (quoting *Mullin v. Raytheon Co.,* 164 F.3d 696, 698 (1st Cir.1999)).

13. *Rojas–Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico,* 394 F.3d 40, 42 (1st Cir.2005) (quoting *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992)).

14. There are no whistleblower claims against Defendant McCurdy because "[t]he Whistleblower statute permits only an 'employer' to be sued, not individual supervisors." *Bennett v. City of Holyoke,* 230 F.Supp.2d 207, 221 (D.Mass.2002) (citing *Orell v. UMass Memorial Medical Center, Inc.,* 203 F.Supp.2d 52, 66–67 (D.Mass.2002)). "The plain language of the statute suggests that the Massachusetts Legislature intended to exclude claims brought under the Whistleblower Statute against individual employees, even when acting in their official capacities." *Bennett,* 230 F.Supp.2d at 221.

15. Compl. ¶ 16.

16. An employer is defined as "the Commonwealth, and its agencies or political subdivisions, including, but not limited to, cities, towns, counties and regional school districts, or any authority, commission, board or instrumentality thereof." Mass. Gen. Laws. ch. 149, § 185(a)(2) (2006).

17. An employee is defined as "any individual who performs services for and under the control and direction of an employer for wages or

because the employee does any of the following:

(1) Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or of another employer with whom the employee's employer has a business relationship, that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, or which the employee reasonably believes poses a risk to public health, safety or the environment;

.     .     .     .     .

(3) Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, or which the employee reasonably believes poses

a risk to public health, safety or the environment.[18]

■ "The Whistleblower Act gives an aggrieved employee a private right of action against a public employer, including a municipality, if the employer takes retaliatory action against [him] for engaging in protected activities."[19] Retaliatory action includes "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment."[20]

■ Defendants argue that Plaintiff's whistleblower claim must be dismissed because Plaintiff failed to provide Defendant Town with written notice of his claim.[21] Defendants are mistaken. An action brought under section 185(b)(3) is not subject to the notice provision of section 185(c)(1).[22] This case is distinguishable

---

other remuneration." Mass. Gen. Laws. ch. 149, § 185(a)(1).

**18.** Mass. Gen. Laws ch. 149, § 185(b).

**19.** *Putnam v. Town of Saugus,* 365 F.Supp.2d 151, 194 (D.Mass.2005) (citing *Bennett v. City of Holyoke,* 362 F.3d 1, 5 (1st Cir.2004)).

**20.** Mass. Gen. Laws ch. 149, § 185(a)(5). The Town already employed Plaintiff as a part-time firefighter when it rejected his application for a full-time firefighter position. Accordingly, this court construes Plaintiff's claim as a failure-to-promote. Failure-to-promote is a retaliatory action within the protections of the Whistleblower Statute. *See Putnam,* 365 F.Supp.2d at 193–94.

Alternatively, Plaintiff's claim of retaliatory action can be considered as a failure-to-hire. Although no precedent holds that failure-to-hire is a retaliatory action in a Massachusetts Whistleblower Statute context, this court concludes that, in this case, Plaintiff's claim is a retaliatory action within the bounds of Mass. Gen. Laws ch. 149, section 185. In reaching this conclusion, the court notes that failure-to-hire is considered a retaliatory action in both Title VII civil rights cases and in Massachusetts state unlawful discrimination cases. *See Powell v. City of Pittsfield,* 221 F.Supp.2d 119 (D.Mass.2002); *Madden v. Town of Framingham Fire Dep't,* No. 0304589, 2006 WL

3010498 (Mass.Super. Sept. 26, 2006) (allowing a firefighter's Mass. Gen. Laws ch. 151(b) failure-to-hire discrimination claim to survive summary judgment).

**21.** Specifically, the statute reads:

Except as provided in paragraph (2), the protection against retaliatory action provided by subsection (b)(1) shall not apply to an employee who makes a disclosure to a public body unless the employee has brought the activity, policy or practice in violation of a law, or a rule or regulation promulgated pursuant to law, or which the employee reasonably believes poses a risk to public health, safety or the environment, to the attention of a supervisor of the employee by written notice and has afforded the employer a reasonable opportunity to correct the activity, policy or practice.

Mass. Gen. Laws ch. 149, § 185(c)(1).

**22.** *Mahoney v. Ragucci,* No. 991196, 2001 WL 34059084, at *8 (Mass.Sup.Ct. May 11, 2001); *See also Dirrane v. Brookline Police Dep't,* 315 F.3d 65, 72–73 (1st Cir.2002) ("[I]t is apparent that an *oral* disclosure to a supervisor is protected outright against retaliation; the requirement of written notice and an opportunity to correct is imposed where the disclosure is to an *outside* public body.")(emphasis in original).

from the facts of *Bennett,* where the First Circuit suggested that filing a lawsuit constitutes disclosure to a public body, thus triggering the Whistleblower Statute's written notice requirement.[23] That case involved violations of section 185(b)(1), not section 185(b)(3). To read a written disclosure requirement into section 185(b)(3) for filing a lawsuit would run counter to the express language of the statute.

■ Defendants also argue that the whistleblower claim should be dismissed because McCurdy's request to Plaintiff that he record firefighter Dunn's activities was not illegal. But the relevant test is not whether the request or order is illegal, but rather whether Plaintiff "reasonably believed" it to be illegal.[24] Here, Plaintiff alleges that the journal was a part of a scheme by McCurdy to have firefighter Dunn fired so that McCurdy's son, Steele, could obtain a salary increase. Whether Plaintiff reasonably believed that the requested activity was illegal is a genuine issue of material fact to be resolved by the trier of fact.[25]

Considering Plaintiff's firefighting experience, McCurdy's alleged behavior, Plaintiff's refusal to follow McCurdy's order and the hiring committee's subsequent decision to recommend candidates with far less experience, Plaintiff has alleged sufficient facts for his whistleblower claim to survive summary judgment.[26]

■ Defendants next assert that if Plaintiff's whistleblower claim survives summary judgment, the other state claims must be dismissed as a matter of law. Under section 185(f) of the Whistleblower Statute, "[t]he institution of a private action [under this statute] ... shall be deemed a waiver by the plaintiff of the rights and remedies available to him for the actions of the employer, under any other contract, collective bargaining agreement, state law, rule or regulation under common law." [27]

This court agrees with Defendants that Plaintiff's breach of contract and promissory estoppel claims against the Town are barred by Plaintiff's whistleblower claim. But the statute only bars claims against the employer. As to the other state law claims against Defendant McCurdy, this court adopts the framework established by Judge Ponsor in *Bennett v. City of Holyoke.*[28] That case concluded that the whistleblower statute is "obviously designed to broaden protection to vulnerable workers, not to force them to jettison legitimate independent claims as a condition to invoking the statute." [29] Here, the whistleblower claim against the Town is independent from the promissory estoppel and contract claims against McCurdy. The Town could have retaliated against Plaintiff for his refusal to obey orders, regardless of whether McCurdy promised Plaintiff he would recommend him to the Board. To avoid narrowing Plaintiff's rights by limiting his recovery against a separate individual defendant, this court will not bar Plaintiff's other state claims against McCurdy.[30]

23. *Bennett v. City of Holyoke,* 362 F.3d 1, 5–6 (1st Cir.2004).

24. *See* Mass. Gen. Laws ch. 149, § 185(b)(3).

25. Plaintiff can reasonably believe that illegal activity occurred even if no law is broken. *See Larch v. Mansfield Mun. Elec. Dept.,* 272 F.3d 63, 69 n. 5 (1st Cir.2001). This point is important in this case because even though no § 1983 violation occurred, a jury could find that Plaintiff reasonably believed McCurdy's order was illegal.

26. *See Putnam,* 365 F.Supp.2d at 195.

27. Mass. Gen. Laws ch. 149, § 185(f) (2006).

28. 230 F.Supp.2d 207 (D.Mass.2002).

29. *Bennett,* 230 F.Supp.2d at 220–21.

30. *See id.*

## C. Breach of Contract

### 1. Failure to Hire

■ Plaintiff alleges that the Town breached a contract "whereby the town promised to hire plaintiff to fill the next available full time firefighter slot."[31] This claim fails because the Town never made such a promise. At no time did the Board ever promise Plaintiff that he would be hired as a full-time firefighter.

■ Plaintiff also asserts that McCurdy, as an agent of the town, entered a contract with Plaintiff that if Plaintiff quit his job, and moved to the Town, then in return, Plaintiff would be hired to fill the next available full-time firefighter position. Such a contract would be unenforceable, as McCurdy lacked actual authority to bind the Town to any contractual obligation to hire Plaintiff as a firefighter.[32] "In this Commonwealth, public officials cannot make a binding contract 'without express authority' "[33] Here, the authority to hire firefighters was vested in the Board, not in the Fire Chief.[34]

■ Nor did McCurdy have apparent authority to promise the Plaintiff that he would be hired. "[T]he doctrine of apparent authority does not apply to the government, its agencies, or its officials."[35] "Those who contract with the officers or agents of a governmental agency must, at their peril, 'see to it that those officers or agents were acting within the scope of their authority' "[36] Because McCurdy had neither actual nor apparent authority to

hire Plaintiff, Plaintiff's breach of contract claim for promising to hire him does not survive summary judgment.

### 2. Failure to Recommend

■ Plaintiff asserts that he entered a contract with McCurdy where McCurdy promised to recommend Plaintiff to the Board for the next available full-time firefighter position in return for Plaintiff quitting his other jobs, moving to the Town, and continuing to do a good job in his position as a per diem firefighter. Plaintiff quit his other jobs, moved to the Town and continued to do a good job in his position as a per diem firefighter. But McCurdy never recommended Plaintiff to the Board for the next available full-time firefighter position.

Plaintiff's claim appears similar to the circumstances of the plaintiff in *McAndrew v. School Committee*.[37] In that case, a music teacher moved from Georgia to Cambridge, Massachusetts, in reliance on the alleged promises of the director and assistant director of music of the Cambridge public schools' (the directors) to recommend the teacher's hiring to the Cambridge school committee.[38] The directors instructed the music teacher that they personally lacked authority to hire him, and that his appointment still needed to be approved by the Cambridge school committee.[39] But the directors told the music teacher that his approval by the school committee was no more than a

---

31. Compl. ¶ 10.

32. *See* Caruso Dep. 25–26, 75, Mar. 30, 2006.

33. *Dagastino v. Comm'r of Corr.*, 52 Mass. App.Ct. 456, 754 N.E.2d 150, 152 (2001) (quotation omitted).

34. Pursuant to Mass. Gen. Laws ch. 31, §§ 6 and 27, only an "appointing authority" may make appointments to civil service positions.

35. *Dagastino*, 754 N.E.2d at 152.

36. *Id.* at 153 (quoting *Bowers v. Bd. of Appeals of Marshfield*, 16 Mass.App.Ct. 29, 448 N.E.2d 1293, 1296 (1983)).

37. 20 Mass.App.Ct. 356, 480 N.E.2d 327 (1985).

38. *Id.* at 329.

39. *Id.*

"rubber stamp" that would be granted upon the recommendation of the directors.[40] The directors never submitted the music teacher's name to the Cambridge school committee.[41] Shortly after the music teacher resettled in Cambridge, his position was terminated.[42]

The court noted that the authority to hire the music teacher was vested solely in the school committee.[43] Nonetheless, the Cambridge music directors had entered a "subsidiary contract" with the music teacher by promising to recommend him for employment with the school committee.[44] The court also held that the directors, as agents for the school committee were "well within their duties in doing what they could to obtain, subject to the necessary approvals, the most qualified candidate."[45]

Likewise, McCurdy had the authority to recommend candidates to the Board and doing so was within the scope of his duties. Whether or not McCurdy made a subsidiary promise to recommend Plaintiff and whether McCurdy had a valid reason not to recommend Plaintiff is a question of fact for a jury. As a result, the issue of whether McCurdy breached a contractual promise to recommend Plaintiff to the Board survives summary judgment.

### D. *Promissory Estoppel*

Under Massachusetts law, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."[46] The party invoking promissory estoppel must have "reasonably relied" on the promise to his detriment.[47]

Plaintiff advances promissory estoppel claims against both Defendants for their failure to hire as well as for McCurdy's failure to recommend Plaintiff to the Board. The court will first discuss the promissory estoppel claims against the Town.

The promissory estoppel claims against the Town fail as a matter of law. "It is well-settled law in Massachusetts that the doctrine of promissory estoppel may not be invoked against the government."[48] "A common thread underlying [the courts'] reluctance to apply principles of estoppel to public entities has been the idea that deference to legislative policy should trump individual acts or statements of a government official that may be contrary to such policy."[49] Courts' reluctance to extend estoppel against the government derives from concerns over public fiscal policy, sovereign immunity and administrative efficiency.[50]

In its recent *Sullivan* opinion, the Supreme Judicial Court allowed a promissory estoppel claim against the government

---

40. *Id.*

41. *Id.*

42. *Id.*

43. *Id.*

44. *Id.* at 331.

45. *Id.*

46. *Veranda Beach Club Ltd. P'ship v. Western Sur. Co.,* 936 F.2d 1364, 1380 (1st Cir.1991) (citation omitted).

47. *Sands v. Ridefilm Corp.,* 212 F.3d 657, 664 (1st Cir.2000) (citing *Coll v. PB Diagnostic Sys., Inc.,* 50 F.3d 1115, 1124 (1st Cir.1995)).

48. *Pavone v. City of Worcester,* No. 011607A, 2006 WL 2424706, at *2 (Mass.Sup.Ct. July 3, 2006) (allowing summary judgment on a promissory estoppel claim against a municipality). *But see Sullivan v. Chief Justice for Admin. and Mgmt. of Trial Court,* 448 Mass. 15, 858 N.E.2d 699, 713 (Mass.2006) (allowing a promissory estoppel claim against the government to proceed).

49. *Sullivan,* 858 N.E.2d at 713.

50. *Harrington v. Fall River Hous. Auth.,* 27 Mass.App.Ct. 301, 538 N.E.2d 24, 30 (1989) (citing *McAndrew,* 480 N.E.2d at 327).

where the public statements made by the government official "were not of the sort that negated requirements of law intended to protect the public interest[.]"[51] *Sullivan* is inapposite to the facts of this case. Here, McCurdy's alleged promise to hire Plaintiff is contrary to Mass. Gen. Laws ch. 31, sections 6 and 27, which hold that only an "appointing authority" may make appointments to civil service positions. In Littleton, the appointing authority is the Board, not the fire chief. As a result, Plaintiff's promissory estoppel claim against the Town cannot proceed.

■ Plaintiff's claims against the Town also fail because he has not alleged facts sufficient to invoke estoppel. "[A]n estoppel claim against the government cannot be erected on the basis of oral representations by a government agent because reliance on such representations is not reasonable or appropriate."[52] Accordingly, Defendants' Motion for Summary Judgment on this count is ALLOWED and Plaintiff's promissory estoppel claims against the Town are dismissed.

The court now addresses Plaintiff's promissory estoppel claims against Chief McCurdy.

### 1. Promise to Hire

■ Plaintiff's first promissory estoppel claim is based on McCurdy's alleged promise that if Plaintiff "moved his residence, severed his ties with other fire departments and continued to perform his duties well, he would become the next full time firefighter in Littleton...."[53]

This claim fails because Plaintiff's reliance on McCurdy's alleged promise that

he would be hired was not reasonable. Chief McCurdy lacked the authority to hire employees.[54] And by his own admission, Plaintiff knew that the Board could refuse to appoint a candidate recommended by McCurdy.[55]

### 2. Promise to Recommend

■ Plaintiff also makes a subsidiary promissory estoppel claim against McCurdy based on McCurdy's alleged oral promise to recommend Plaintiff to the Board. McCurdy's alleged promise to recommend Plaintiff does not impinge the Board's hiring authority. Whether McCurdy made this promise, and whether Plaintiff reasonably relied on it are questions that a jury may decide. Plaintiff's promissory estoppel claim against McCurdy for his alleged promise to recommend that the Board hire Plaintiff as a full-time firefighter survives summary judgment.

### E. Misrepresentation

Plaintiff brings a misrepresentation claim against McCurdy for intentionally misrepresenting to Plaintiff that if he moved to the Town, severed his ties with other fire departments and continued to perform his duties, he would become the next full-time Littleton firefighter.

■ To state a claim for misrepresentation, a plaintiff must prove that " 'the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.' "[56] The plaintiff's

51. *Sullivan,* 858 N.E.2d at 713.

52. *Bateman v. F.D.I.C.,* 112 F.Supp.2d 89, 95 (D.Mass.2000) (citing *Heckler v. Cmty. Health Servs. of Crawford County, Inc.,* 467 U.S. 51, 65, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984)).

53. Compl. ¶ 12.

54. *See* Caruso Dep. 25–26, 75, Mar. 30, 2006.

55. *See* Pl.'s Dep. 88, Jan. 20, 2006.

56. *Levesque v. Ojala,* No. 20034485, 2005 WL 3721859, at *20 (Mass.Sup.Ct. Dec. 8, 2005)

reliance upon defendants' representation must be reasonable.[57]

In order to avoid summary judgment on this claim, Plaintiff must "do more than offer bald allegations or conjecture concerning defendant's intent."[58] Plaintiff must "provide *some* evidence, other than speculation, from which a jury could conclude" that (1) McCurdy's alleged representations made to Plaintiff concerning the full-time position were false, and (2) when McCurdy made these representations, he had no intention of following through on them.[59] Plaintiff does not meet this burden. Plaintiff presents no evidence to suggest that when McCurdy made these representations, he had no intention of following through on them. As a result, Defendant's Motion for Summary Judgment on the misrepresentation claim is ALLOWED.

Even if Plaintiff supplied some evidence of McCurdy's intentional misrepresentation, Plaintiff's claim still fails because his reliance on McCurdy's oral statements that the Town would hire him was not reasonable. "When a person acts in a way contrary to his own acknowledged understanding of the facts, his acts must be deemed unreasonable as a matter of law."[60] Here, Plaintiff knew that McCurdy had no authority to hire him as a full-time firefighter. In his deposition, Plaintiff admits he knew that the hiring decisions were made by the Board and that the Board could refuse McCurdy's recommendation.[61] Plaintiff cannot prove that his reliance on McCurdy's promise to hire him was reasonable. And as a result, the misrepresentation claim fails.

## F.  Section 1983 Claim

Plaintiff submits that he is entitled to relief under 42 U.S.C. § 1983 because McCurdy violated Plaintiff's freedom of speech under the First Amendment by ordering Plaintiff to keep a journal for the purpose of collecting false evidence against firefighter Dunn.[62] Plaintiff asserts that his refusal to create this journal resulted in retaliation where McCurdy did not recommend him and the Town refused to hire him as a full-time firefighter.[63] This court finds Plaintiff's argument unpersuasive.

(quoting *Danca v. Taunton Sav. Bank*, 385 Mass. 1, 429 N.E.2d 1129, 1133 (1982)).

**57.** *Mahaney v. John Hancock Mutual Life, Inc.*, 6 Mass.App.Ct. 919, 380 N.E.2d 140, 141 (1978) (barring recovery where plaintiff's reliance on insurance agent's oral misrepresentations of pension benefits was unreasonable).

**58.** *Zuckerman v. McDonald's Corp.*, 35 F.Supp.2d 135, 146 (D.Mass.1999) (Ponsor, J.).

**59.** *See id.*

**60.** *Trifiro v. New York Life Ins. Co.*, 845 F.2d 30, 33 (1st Cir.1988); *But see Rodi v. Southern New England School Of Law*, 389 F.3d 5, 16 (1st Cir.2004) ("Under Massachusetts law, the reasonableness of a party's reliance ordinarily constitutes a question of fact for the jury.").

**61.** Pl.'s Dep. 88, Jan. 20, 2006.

**62.** The First Amendment protects both the right to speak and the right not to speak. *See Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 573, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995). ("[O]ne important manifestation of the principle of free speech is that one who chooses to speak may also decide 'what not to say' " (citation omitted)).

**63.** First Amendment violations under 42 U.S.C. § 1983 include adverse employment actions such as discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand. *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir.2002).

## 1. The Town

▮▮▮▮▮ Municipalities cannot be held liable for constitutional torts under 42 U.S.C. § 1983 based upon the theory of *respondeat superior*.[64] Instead, § 1983 liability must be grounded in the execution of a government policy or custom to implicate a municipality in the deprivation of a person's constitutionally protected rights.[65] Specifically, to establish municipal liability under § 1983, a plaintiff must show "1) there existed a municipal custom or policy of deliberate indifference to the commission of constitutional violations . . .; and 2) this custom or policy was the cause of and moving force behind, the particular constitutional deprivation of which [plaintiff] is complaining."[66] Because Plaintiff does not allege the existence of any relevant custom or policy of the Town, the § 1983 claim against the Town is DISMISSED.

## 1. Fire Chief McCurdy

▮▮▮▮▮ Plaintiff's § 1983 claim against Chief McCurdy fails because Plaintiff is unable to show that a constitutional deprivation occurred. A public employee's speech or right not to speak is constitutionally protected under the First Amendment when it is made "as a citizen upon matters of public concern."[67] This rule reflects the realization that government offices could not function if every employment decision became a constitutional matter.[68]

▮▮▮▮▮ "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."[69] A public employee does not derive any special advantage in disputes of a private nature, "such as garden variety employment beefs," just because the employer happens to be a state actor and is subject to suit under 42 U.S.C. § 1983.[70]

"When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment."[71] And when an employee speaks on matters of personal interest, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency . . . in reaction to the employee's behavior."[72]

This court concludes that McCurdy's request that Plaintiff document firefighter Dunn's activities does not involve a matter of public concern. In reaching this conclusion, this court is persuaded by the analy-

---

**64.** *Berard v. Town of Millville,* 113 F.Supp.2d 197, 203 (D.Mass.2000) (citing *Monell v. Dep't of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

**65.** *Id.*

**66.** *Foley v. City of Lowell,* 948 F.2d 10, 14 (1st Cir.1991) (quoting *Bordanaro v. McLeod,* 871 F.2d 1151, 1156 (1st Cir.1989)).

**67.** *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

**68.** *Bennett,* 230 F.Supp.2d at 223 (quoting *Connick,* 461 U.S. at 143, 103 S.Ct. 1684).

**69.** *Torres–Rosado v. Rotger–Sabat,* 335 F.3d 1, 12 (1st Cir.2003) (quoting *Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684).

**70.** *Bennett,* 230 F.Supp.2d at 223.

**71.** *Bates v. Mackay,* 321 F.Supp.2d 173, 179 (D.Mass.2004) (noting also that a letter relating to the internal operating procedures of the police department would not be of public concern).

**72.** *Berard v. Town of Millville,* 113 F.Supp.2d 197, 203 (D.Mass.2000) (Gorton, J.) (quoting *Connick,* 461 U.S. at 147, 103 S.Ct. 1684).

sis in *Berard*.[73] In that case, a police chief threatened to fire an employee if he did not take the blame for some departmental bungling. The police chief directed the employee to make multiple phone calls to members of the public where the employee accepted responsibility and apologized for the incident. The police chief also forbade the employee from honoring the Board of Selectmen's request that the employee attend a hearing about the incident. In concluding that the police chief's orders to the employee were not of a public concern, the court noted that the phone calls and the report to the Board of Selectmen related to the employee's job and the "internal affairs" of the Police Department—both matters of private concern.[74]

Likewise, McCurdy's alleged request to Plaintiff that he keep a journal to document the activity of a coworker involves the internal affairs of the Town of Littleton Fire Department. Allegations of corruption, impropriety and malfeasance by public officials are matters of public concern.[75] But here, Plaintiff's speech as requested by his supervisor does not fall within these categories. McCurdy allegedly asked Plaintiff to catalog the activity and statements of a coworker. Plaintiff's belief that this was unethical and part of an "illegal conspiracy" are insufficient to transform this request into a directive to engage in corruption and malfeasance.

Further, Plaintiff concedes that McCurdy never expressly asked him to manufacture false evidence about firefighter Dunn. He does contend though, that McCurdy "implied" that Plaintiff should make up false evidence against firefighter Dunn. Plaintiff provides nothing to support this allegation other than bald assertions.

Because Plaintiff's refusals to report on his coworker are internal affairs of private concern, they are not constitutionally protected, and Plaintiff suffered no deprivation of his First Amendment right of freedom of speech. As a result, Plaintiff's § 1983 claim fails.[76]

### Conclusion

For these reasons, Defendants' motion for summary judgment is ALLOWED IN PART AND DENIED IN PART. Count I (Breach of Contract) and Count II (promissory estoppel) are DISMISSED WITH PREJUDICE except for McCurdy's alleged promise to recommend. Count III (whistleblower statute) stands. Count IV (misrepresentation) and Count V (42 U.S.C. § 1983) are DISMISSED WITH PREJUDICE. AN ORDER WILL ISSUE.

---

**73.** *See id.*

**74.** *Id.*

**75.** *O'Connor v. Steeves*, 994 F.2d 905, 915 n. 6 (1st Cir.1993).

**76.** Plaintiff's reliance on *Dahm v. Flynn* is unpersuasive. 60 F.3d 253 (7th Cir.1995). In *Dahm*, the Seventh Circuit Court of Appeals reversed and remanded a district court's grant of summary judgment on a § 1983 claim where an employee accused a supervisor of violating her right to free speech. In that case, a supervisor retaliated against an employee after the employee testi-

fied negatively against the supervisor at a legislative audit hearing. Here, Plaintiff made no such testimony against his supervisor McCurdy, rather he refused to speak about a matter of private concern.

Plaintiff also relies on *Pro v. Donatucci*. 81 F.3d 1283 (3d Cir.1996). In *Pro*, an employee's First Amendment rights were violated when her supervisor fired her after the supervisor learned that the employee planned to appear as an adverse witness in the supervisor's divorce proceeding. Those facts are plainly inapposite to this case.